1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STSIAPAN LAYSHEVICH,

11              Plaintiff,                    No. CIV S-09-1257 GGH

12        vs.

13
     MICHAEL J. ASTRUE,                       ORDER
14   Commissioner of
     Social Security,
15
                Defendant.
16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying his application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").  For the reasons that follow, plaintiff's

20   Motion for Summary Judgment is granted in part, the Commissioner's Motion for Summary

21   Judgment is denied, and this matter is remanded to the ALJ for further findings as directed in this

22   opinion.  The Clerk is directed to enter judgment for plaintiff.

23   BACKGROUND

24              Plaintiff, born June 8, 1948, applied on November 16, 2006 for disability benefits.

25   (Tr. at 26, 51.)  Plaintiff alleged he was unable to work due to low back pain, chest pain, knee

26   pain, and left leg pain and numbness.  (Id. at 51.)  In a decision dated July 23, 2008, ALJ L. Kalei

                                              1

Fong determined that plaintiff was not disabled.  (Id. at 13-21.)  The ALJ made the following findings:[1]

> 1.    The claimant has not engaged in substantial gainful activity since November 16, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq.).*
>
> 2.    The claimant has the following medically determinable impairments: low back pain, left knee pain, and depression (20 CFR 416.920(c)).
>
> 3.    The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 416.921).
>
> 4.    The claimant has not been under a disability, as defined in the Social Security Act, since November 16, 2006 (20 CFR

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

    Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

    Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

    Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

    Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1     416.920(c)), the date the application was filed.

2 (Tr. at 13-21.)

3 <u>ISSUES PRESENTED</u>

4     Plaintiff has raised the following issue: Whether the ALJ's Step Two Finding was

5 Error.

6 <u>LEGAL STANDARDS</u>

7     The court reviews the Commissioner's decision to determine whether (1) it is

8 based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

9 the record as a whole supports it.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir.1999).

10 Substantial evidence is more than a mere scintilla, but less than a preponderance.  <u>Connett v.</u>

11 <u>Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

12 as a reasonable mind might accept as adequate to support a conclusion."  <u>Orn v. Astrue</u>, 495 F.3d

13 625, 630 (9th Cir. 2007), *quoting* <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ

14 is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

15 ambiguities."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

16 "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

17 rational interpretation."  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008).

18 <u>ANALYSIS</u>

19     Plaintiff contends that the ALJ refused to find plaintiff's back and leg pain, and

20 carpal tunnel syndrome to be severe impairments at step two.

21     At the second step of the disability analysis, an impairment is not severe only if it

22 "would have no more than a minimal effect on an individual's ability to work, even if the

23 individual's age, education, or work experience were specifically considered."  SSR 85-28.  The

24 purpose of step two is to identify claimants whose medical impairment is so slight that it is

25 unlikely they would be disabled even if age, education, and experience were taken into account.

26 <u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis

1    screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th

2    Cir. 1996).  At this step, the ALJ may decline to find a severe impairment *only* if the evidence

3    establishes a slight abnormality that has no more than a minimal effect on an individual's ability

4    to work." Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

5             The ALJ only found plaintiff's low back pain, left knee pain and depression to be

6    medically determinable impairments, but did not find them to be severe, and found no severe

7    impairments whatsoever.  (Tr. at 15.)  Back and leg pain are by themselves only symptoms.

8    Plaintiff can only establish an impairment if the record includes signs – the results of "medically

9    acceptable clinical diagnostic techniques," such as tests – as well as symptoms, i.e., plaintiff's

10   representations regarding his impairment.  Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th

11   Cir. 2005).  Here, an EMG dated January 26, 2007 indicated left lumbar radiculopathy.  (Tr. at

12   108.)  Although this study would tend to indicate a severe impairment, it is the only objective

13   record of radiculopathy.  It is impossible to determine if it lasted for at least twelve months, or

14   whether it was only a passing irritant.

15            An x-ray of the lumbar spine, dated January 26, 2007, showed a mild degree of

16   spondylosis, mild disc thinning at L4-5, and mild right convex thoracolumbar scoliosis.  The SI

17   joints and paraspinous soft tissues were normal.  The right hip was normal.  (Tr. at 112.)

18   Another lumbar x-ray dated approximately a year later, on January 17, 2008, was not negative as

19   to the lumbar spine as defendant asserts, but repeated the earlier findings and added a finding of

20   disc degeneration at L4-5.  It also indicated that the SI joints were normal.  (Id. at 182.)

21            Treating records indicate that although plaintiff complained of back pain, exams

22   indicated full range of motion on December 11, 2006.  (Id. at 119.)  Another undated report

23   indicates a normal back, despite back pain.  (Id. at 128.)  On November 8, 2006, plaintiff

24   complained of back pain radiating down the left leg and numbness, yet his treating physicians

25   ordered no treatment other than the aforementioned diagnostic studies until January 26, 2007,

26   when physical therapy was planned and a note was made to "consider MRI." (Id. at 129, 113.)  It

4

1    does not appear that plaintiff ever went to physical therapy.  On January 20, 2007, low back pain

2    was diagnosed and a neurology consult was ordered.  It appears that plaintiff was prescribed

3    Naproxen at this time but the treating notes are difficult to decipher.  (Id. at 114.)

4        The ALJ mainly relied on the consultative report of Dr. Seu, who examined

5    plaintiff on June 29, 2007, without the benefit of any medical records.  (Tr. at 167.)  The

6    regulations require that a consultative examiner be given any necessary background information

7    about the plaintiff's condition.  20 C.F.R. § 404.1517.  Background information is essential

8    because consultative exams are utilized "to try to resolve a conflict or ambiguity if one exists."

9    20 C.F.R. § 404.1519a(a)(2).

10        Here, Dr. Seu diagnosed low back pain and left knee pain.  (Tr. at 170.)  He

11   thought plaintiff could work without any limitations.  (Id.)  The ALJ relied heavily on this

12   assessment, and erred in doing so based on Dr. Seu's lack of access to any records. Where there

13   are EMG studies and x-rays available, it is important for a consultant to have access to them.  In

14   fact, even the state agency doctor had better access to plaintiff's medical records than did this

15   examining internist.  Additionally, both the SSA examiners and the ALJ did not have access to

16   the MRI submitted to the Appeals Council; see infra.  (Tr. at 172-75.)  For these reasons, this

17   consultant report should not have been given significant weight.

18        When considered with the ALJ's credibility analysis, it is clear that this case must

19   be remanded.  The ALJ's credibility analysis is somewhat confusing.  She states:

20            After considering the evidence of record, the undersigned finds that
              the claimant's medically determinable impairments could
21            reasonably be expected to produce the alleged symptoms; however,
              the claimant's statements concerning the intensity, persistence and
22            limiting effects of these symptoms are not credible to the extent
              they are inconsistent with finding that the claimant has no severe
23            impairment or combination of impairments for the reasons
              explained below.
24   (Tr. at 16.)

25        These statements are inconsistent in finding that plaintiff's impairments could

26   produce the symptoms that plaintiff claims, yet on the other hand finding that plaintiff is not

credible because he has no severe impairment.  If the impairment is reasonably expected to produce the alleged symptoms, then by definition it must be a severe impairment.  Because there are now x-rays, MRIs, and EMGs which support a finding of severe impairment as to plaintiff's back and leg pain, the level of severity of these problems and to what extent they are disabling is dependent in large part on plaintiff's credibility.  The ALJ's credibility analysis, as described above, is flawed.

Also attached to plaintiff's motion as "new evidence" is an MRI submitted to the Appeals Council after the hearing.[2]  (Pl.'s Mot., Ex. at 2.)  Its findings include mild disc bulging at L1-2, L3-4 and disc bulging at L4-5 and L5-S1.  Spondylosis was present but there was no high grade lumbar canal stenosis.  The report additionally found "asymmetric narrowing of the left neural foramen at L5-S1, there is also mild narrowing of the right inferior neural foramina at L4-5 and L5-S1."  (Id.)  ALJs have regularly found disc bulging and spondylosis to be severe impairments.  Preston v. Secretary of Health and Human Services, 854 F.2d 815, 817 (6th Cir. 1988) (bulging disc); Larry v. Astrue, 2010 WL 1038554, *1 (M.D. Ala. March 19, 2010) (slight disc bulge, spondylosis); Woody v. Astrue, 357 Fed. Appx. 765, 2009 WL 4884541 (9th Cir. 2009) (spondylosis).

This objective study is further evidence indicating that plaintiff's back problem was a severe impairment.  The ALJ had not seen the MRI even though it is technically part of the record, and on remand she will be able to consider this evidence in conjunction with further development of the record by obtaining a consultation with a specialist who has access to all of

---

[2]  The undersigned will infer that this MRI was provided to the Appeals Council and is therefore not considered new evidence, as the Commissioner suggests.  Ligenfelter v. Astrue, 504 F.3d 1028, 1030 (9th Cir. 2007) citing Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993).  It is already part of the record, and although the transcript does not contain the MRI itself, the letter submitted by plaintiff's counsel at the time of the appeal is the same one attached to the MRI as an exhibit to plaintiff's current motion.  (Tr. at 8.)  It is dated November 28, 2008, and refers to an MRI result from Dr. Rafanov.  (Tr. at 3, 192-93.)  The MRI result attached to the same letter and plaintiff's motion is dated October 27, 2008, one month before the letter, and is Dr. Rafanov's report, as the letter suggests.  (Pl.'s Mot., Ex. at 1-2.)

1    plaintiff's medical records.

2          In making this determination, the undersigned is by no means instructing that an

3    outcome of disability result from the remand.  In fact, it is quite apparent that since immigrating

4    to the United States in 2006, plaintiff has developed very little in the way of a medical record.

5    He has no records from Belarus despite his claims that his medical impairments began there,

6    where he was allegedly hospitalized three times a year when he was unable to walk due to back

7    problems.  Furthermore, as discussed throughout this opinion, the nature of plaintiff's alleged

8    disability appears somewhat suspicious.

9          Here, the ALJ found plaintiff to be not entirely credible for many reasons, and

10   plaintiff does not contest those findings.[3]  For example, the ALJ specifically pointed out that the

11   plaintiff reported to Dr. Seu that he had endured low back pain for fifteen years prior to the 2007

12   exam with this doctor, and had had left knee pain for the previous ten years.  (Tr. at 18, 167.)

13   The ALJ pointed out, however, that plaintiff last worked as a taxi driver in Belarus in 2005.

14   Furthermore, in May, 2007, plaintiff told Dr. Cheema that he could not work since he came to the

15   United States due to pain, but in Belarus he had always been employed.  (Id. at 18, 152.)  In any

16   event, plaintiff apparently did his past work for years with this alleged pain.

17         Also submitted at the hearing was another report by plaintiff's treating physician,

18   Dr. Rafanov at Manzanita Medical Clinic, dated April 11, 2008.  It diagnoses lumbar

19   radiculopathy on the left and carpal tunnel syndrome.  (Id. at 184.)  This report concludes that

20   plaintiff can do less than sedentary work.  (Tr. at 184-85.)  "A statement by any physician that the

21   claimant is disabled or unable to work is a conclusion on the ultimate issue to be decided . . . and

22

23         [3]  The ALJ noted all of the unremarkable or minimal findings in the record, and the lack
     of treatment in light of the alleged degree of pain.  She also observed that although an MRI was
24   considered, it was never performed.  (Tr. at 16-17.)  Examination by Dr. Seu showed full range
     of motion and no physical discomfort.  Plaintiff had also complained of a disabling mental
25   impairment; however, a psychiatric evaluation was normal.  (Id. at 17.)  Plaintiff's demeanor and
     appearance at the hearing was also unpersuasive.  (Id. at 18.)  Plaintiff's daily activities were also
26   not significantly limited, allowing him to take short walks to the store, do chores around the
     house, go to church, and socialize with his four children.  (Id. at 20.)

1   is not binding on the [ALJ] in reaching his determination as to whether the claimant is disabled

2   within the meaning of the [Act]." Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983), (citing

3   Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988), 20 C.F.R. §§ 404.1527 and 404.927); accord,

4   Magallanes v. Bowen, 881 F.2d 747, 750-51 (9th Cir. 1989).  The ALJ discounted this opinion

5   because it conflicted with the remainder of the record, and the objective evidence did not support

6   the level of severity assigned by this physician.  (Id. at 19.)  It should be noted that plaintiff does

7   not dispute the ALJ's decision to give this report less weight.

8           Contrary to the ALJ's assertion that this report does not contain a reference to

9   objective testing to support these diagnoses, and defendant's parroting of the ALJ's finding, the

10  report specifically states that it relies on an abnormal x-ray and EMG, as outlined above.  (Id. at

11  184.)  Those diagnostic studies do not address plaintiff's alleged carpal tunnel syndrome, but

12  plaintiff has provided new evidence in the form of an EMG study with his motion, dated April

13  11, 2008, which does indicate an abnormal study of mild median neuropathy at the wrist and

14  ulnar sensory neuropathy.  (Pl.'s Mot., Ex. at 3-4.)

15          This EMG was not included in the record and therefore it must be determined

16  whether it should be considered new evidence.  New evidence is "material," if the court finds a

17  reasonable possibility that considering the evidence would have changed the disability

18  determination.[4]  See Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380-

19  1381 (9th Cir. 1984).  Unless it is probative of plaintiff's condition at or before the disability

20  hearing, new evidence is not material.  See 42 U.S.C. § 416(i)(2)(G); Sanchez v. Secretary of

21  Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987) (holding that new evidence

22  was not material because it related to a medical condition not significantly at issue at time of

23  \\\\\

24  \\\\\

25  _____

26      [4] Evidence is not deemed immaterial solely by the date it was created.  Later dated
    evidence may have substantive impact on a preceding period.

8

1    hearing).[5]

2           "Good cause" requires more than "simply . . . obtaining a more favorable report

3    from an expert witness once [a] claim is denied.  The claimant must establish good cause for not

4    seeking the expert's opinion prior to the denial. . . ."  Clem v. Sullivan, 894 F.2d 328, 332 (9th

5    Cir. 1990) (citing Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985)).  For example, good

6    cause exists if new evidence earlier was unavailable, in the sense that it could not have been

7    obtained earlier.  Embrey v. Bowen, 849 F.2d 418, 423-24 (9th Cir.1988).

8           The EMG is probative of plaintiff's condition on April 11, 2008, three months

9    prior to the ALJ's decision and about a month before the administrative hearing.  Plaintiff has not

10   submitted a reason why this report was not submitted earlier, other than to state that it "did not

11   make it into the record."  (Pl.'s Mot. at 4 n. 2.)  Plaintiff has not provided an acceptable reason

12   why this report was not previously submitted to the ALJ.

13          Pursuant to 20 C.F.R. § 404.1512(d), the ALJ will make "every reasonable effort"

14   to obtain evidence from medical sources.  The record will be kept open after the hearing for

15   submission of post-hearing evidence known to be in existence.  1 Soc. Sec. Disab. Claims Prac.

16   & Proc. § 16:57 (2nd Ed.)  "Even if the ALJ does not hold a record open for submission of new

17   evidence, evidence can be submitted up to the date a hearing decision is issued."  Id.

18          In this case, the hearing occurred on May 21, 2008, over a month after the EMG

19   study was completed.  At that time, the ALJ told plaintiff that he could always re-open or re-file

20   more records.  (Id. at 202.)   Plaintiff did not submit the EMG report to the ALJ or the Appeals

21   Council, despite its prior existence.  The ALJ's decision, issued July 23, 2008, fails to refer to

22   this EMG, and in fact states that there is no objective evidence to support the treating physician's

23   diagnosis of carpal tunnel syndrome.  (Id. at 19.)

24   _____

25          [5]  When new evidence reflects plaintiff's current condition but is not probative of a
     condition at the time of the initial determination, the correct procedure is to reapply for benefits.
26   See Ward v. Schweiker,  686 F.2d 762, 765-66 (9th Cir.1982).

1    As the EMG was in existence at the time of the hearing, it is probative of

2    plaintiff's condition at the very end of the pertinent time period.  Nevertheless, plaintiff's casual

3    statement that the report did not make it into the record does not show good cause, especially in

4    light of the two month delay after the hearing before the ALJ issued her decision.

5    More importantly, the remainder of the record does not evidence a carpal tunnel

6    problem.  In fact, when plaintiff saw consulting physician Seu, he did not complain of this

7    problem at all.  (Tr. at 167.)  The SSA examiners had no record of complaint of this problem

8    either.  (Id. at 172-75.)  Furthermore, carpal tunnel syndrome was not raised as an impairment by

9    plaintiff until the administrative hearing when he submitted the April 11, 2008 report by

10   Manzanita Medical Clinic.  (Id. at 26, 92, 184-87.)   From November, 2006, when plaintiff filed

11   his application, until April, 2008, plaintiff did not complain of this problem, receive a diagnosis

12   of CTS, or seek treatment for this problem.  Plaintiff has failed to show good cause why this

13   report should be considered.  The best recourse is for plaintiff to file a new application for

14   benefits in this regard, but only if the problem is severe enough under guiding standards.

15   In sum, despite a real lack of treatment[6] in comparison to the alleged degree of

16   pain, the ALJ erred in relying on Dr. Seu's opinion because this consultant had no access to

17   plaintiff's medical records.  On remand, the ALJ shall consider plaintiff's back and knee

18   problems to be severe impairments.  The ALJ shall further develop the record in regard to these

19   impairments, including obtaining a consultative exam which has the benefit of all the medical

20   records, including the MRI before the Appeals Council.  The ALJ shall then complete the

21   sequential analysis.  Plaintiff's carpal tunnel syndrome is not considered a severe impairment,

22

23       [6] Although he reported to Dr. Seu that he had experienced left knee pain for ten years and
that it was "sharp," plaintiff had never obtained an x-ray for it, and reported that he "had no
24   specific medical treatment" for it.  (Id. at 167.)  Plaintiff reported to Dr. Seu that he had
undergone physical therapy for his back; however, there are no records of such treatment. He also
25   received no cortisone injections or other treatment.  Plaintiff testified at the hearing that in
America he does "therapy by myself.  I stay home, and lay down, and do – I buy special herbs
26   and do massage to my legs."  (Tr. at 201.)

1  and shall not be considered on remand, but plaintiff has the prerogative to file a new claim for

2  benefits on this impairment as he sees fit.

3  CONCLUSION

4         For the reasons stated herein, IT IS ORDERED that: plaintiff's Motion for

5  Summary Judgment is GRANTED in part pursuant to Sentence Four of 42 U.S.C. § 405(g), the

6  Commissioner's Cross Motion for Summary Judgment is DENIED, and this matter is remanded

7  for further findings in accordance with this order.  The Clerk is directed to enter Judgment for

8  plaintiff.

9  DATED: 08/09/2010                                    /s/ Gregory G. Hollows

10                                             GREGORY G. HOLLOWS
                                           U.S. MAGISTRATE JUDGE

11  GGH/076
Layshevich1257.ss.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26